**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LUIS D. DE LA CRUZ, | : | |
| | | Civil Action No. 10-3325 (NLH) |
| Petitioner, | : | |
| | | |
| v. | : | **OPINION** |
| | | |
| DONNA ZICKEFOOSE, | : | |
| | | |
| Respondent. | : | |

**APPEARANCES**:

| | |
|---|---|
| Petitioner pro se | Counsel for Respondent |
| Luis D. De La Cruz | Kristin Lynn Vassallo |
| F.M.C. - Devens - Unit N4 | Asst. U.S. Attorney |
| P.O. Box 879 | 970 Broad Street |
| Ayer, MA  01432 | Newark, NJ 07102 |

**HILLMAN**, District Judge

Petitioner Luis D. De La Cruz, a prisoner previously confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The sole respondent is Warden Donna Zickefoose.

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

I.  BACKGROUND

For a number of years, beginning at least in 1999 and continuing until his arrest in 2001, Petitioner Luis D. De La Cruz was involved in the distribution of heroin in and around Lawrence, Massachusetts.  See United States v. De La Cruz, 514 F.3d 121, 125-26 (1st Cir. 2008).  On February 14, 2006, following his conviction on various drug offenses, Petitioner was sentenced to a term of twenty years' imprisonment to be followed by five years' supervised release.  Id. at 128.

At the time of his conviction, Petitioner was classified by the Bureau of Prisons as a deportable alien.[2]

At the time of his conviction, Petitioner had not earned a high school diploma; therefore, he participated in the Spanish-language GED program from October 10, 2006 to February 28, 2007.  On February 28, 2007, having completed 254 instructional hours, Petitioner withdrew from the GED class at the United States Penitentiary in Atlanta, Georgia.  He was placed in "GED unsatisfactory" status as of that date.  On August 11, 2008, while confined at F.C.I. Fort Dix, in New Jersey, Petitioner re-

---

[2] In this regard, the Court notes that Petitioner (a native of the Dominican Republic) filed in this Court, in August 2009, a Petition for an order establishing derivative citizenship through the naturalization of his mother, pursuant to 8 U.S.C. § 1432(a)(3), which he later withdrew upon approval of his N-600 application for certificate of citizenship.  See De La Cruz v. Unknown, Civil No. 09-4450 (D.N.J.).  The N-600 application for certificate of citizenship is for use by an individual to document U.S. citizenship status based on citizen parentage.

enrolled in the literacy program. On November 5, 2008, Petitioner completed the GED program and earned his GED.

Based on his "GED unsatisfactory" status from February 28, 2007, till August 11, 2008, Petitioner was awarded 42 days good conduct time for the periods from March 22, 2006, through March 21, 2007, (the "2007 GCT") and from March 22, 2007, though March 21, 2008 (the "2008 GCT").[3]

On April 16, 2010, the Bureau of Immigration and Customs Enforcement adjudicated Petitioner's N-600 Application for certificate of citizenship and administered the Oath of allegiance, thereby finalizing Petitioner's U.S. citizenship.

Here, Petitioner asserts that the Bureau of Prisons refused to award him the maximum 54 days good conduct time in 2007 and 2008, arbitrarily and in violation of his due process rights.[4]

---

[3] Good conduct time is calculated at the end of each year that an inmate serves. See 18 U.S.C. 3624(b); Barber v. Thomas, 130 S.Ct. 2504 (2010). Because Petitioner earned jail credit starting on March 22, 2001, his good conduct time is calculated on March 21 of each subsequent year.

[4] Petitioner appears to have exhausted his administrative remedies before filing this Petition.

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies. See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).

In general, the BOP Administrative Remedy Program is a

Respondent has answered that the 2007 GCT and 2008 GCT were properly calculated. This matter is now ready for decision.

## II. LEGAL STANDARD

"Habeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994). A petition must "specify all the grounds for relief" and must set forth "facts supporting each of the grounds thus specified." See Rule 2(c) of the Rules Governing § 2254 Cases in the U.S. District Courts (amended Dec. 1, 2004) ("Habeas Rules"), made applicable to § 2241 petitions through Rule 1(b) of the Habeas Rules.

Nevertheless, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle

---

multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. Response times for each level of review are set forth in 28 C.F.R. § 542.18. An inmate must initially attempt to informally resolve the issue with institutional staff. 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response. Id. Appeal to the General Counsel is the final administrative appeal. Id. If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

4

v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

### III.  ANALYSIS

A.  The Statutory and Regulatory Framework

Federal law provides that federal prisoners may receive credit toward the service of their sentences for satisfactory behavior, subject to (among other things) an inmate's completion of, or "satisfactory progress" toward, a GED credential or high school diploma, as follows in pertinent part:

> (1)  Subject to paragraph 2, a prisoner who is serving a term of imprisonment of more than 1 year[,] other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.  Subject to paragraph 2, if the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate.  In awarding credit under this section, the Bureau shall consider whether the prisoner, during the relevant period, has earned, or is making satisfactory progress toward

5

>earning, a high school diploma or an equivalent degree.
>...
>
>(4)   Exemptions to the General Educational Development requirement may be made as deemed appropriate by the Director of the Federal Bureau of Prisons.

18 U.S.C. § 3624(b).[5]

The Bureau of Prisons has promulgated a regulation governing the award of good conduct time credits under § 3624(b).

>(c)   For inmates serving a sentence for an offense committed on or after April 26, 1996, the Bureau will award
>
>>(1) 54 days credit for each year served ... if the inmate has earned or is making satisfactory progress toward earning a GED credential or high school diploma; or
>>
>>(2) 42 days credit for each year served ... if the inmate has not earned or is not making satisfactory progress toward earning a GED credential or high school diploma.
>
>(d)   Notwithstanding the requirements of paragraphs (b) and (c) of this section, <u>an alien who is subject to a final order of removal, deportation, or exclusion</u> is eligible for, but is not required to, participate in a literacy program, or to be making satisfactory progress toward earning a General Educational Development (GED) credential, to be eligible for a yearly award of good conduct time.
>
>(e)   The amount of good conduct time awarded for the year is also subject to disciplinary disallowance ... .

28 C.F.R. § 523.20 (emphasis added).  <u>See also</u> Bureau of Prisons Program Statement 5884.03, Good Conduct Time.

---

[5] "Paragraph 2" referred to in the text of § 3624(b)(1) establishes the date on which such good-conduct time vests.

BOP regulations further provide that an inmate "shall be deemed to be making satisfactory progress toward earning a GED credential or high school diploma" unless and until one of the following occurs:

>    (i)   The inmate refuses to enroll in the literacy program;
>
>    (ii)  The inmate has been found to have committed a prohibited act that occurred in a literacy program during the last 240 instructional hours of the inmate's most recent enrollment in the literacy program; or
>
>    (iii) The inmate has withdrawn from the literacy program.

28 C.F.R. § 544.73(b)(1). <u>See also</u> BOP Program Statement 5350.28, Literacy Program (GED Standard).

A second statutory education provision, establishing a mandatory "functional literacy" program requirement, is set forth at 18 U.S.C. § 3624(f).

>    (1)  The Attorney General shall direct the Bureau of Prisons to have in effect a mandatory functional literacy program for all mentally capable inmates who are functionally literate ... .
>
>    (2)  Each mandatory functional literacy program shall include a requirement that each inmate participate in such program for a mandatory period sufficient to provide the inmate with an adequate opportunity to achieve functional literacy, and appropriate incentives which lead to successful completion of such programs shall be developed and implemented.
>
>    (3)  As used in this section, the term "functional literacy" means --
>
>        (A)  an eighth grade equivalence in reading and mathematics on a nationally recognized standardized test;

7

>    (B)   functional competency or literacy on a nationally recognized criterion-referenced test; or
>
>    (C)   a combination of subparagraphs (A) and (B).
>
> (4)   Non-English speaking inmates shall be required to participate in an English-As-A-Second-Language program until they function at the equivalence of the eighth grade on a nationally recognized educational achievement test.

18 U.S.C. § 3624(f).

Pursuant to the regulations promulgated by the BOP to implement the mandatory functional literacy requirement, most federal inmates who do not have a high school diploma or GED are required to "attend an adult literacy program for a minimum of 240 instructional hours or until a GED is achieved, whichever occurs first."  28 C.F.R. § 544.70.  Exempted from this requirement are, among other specified categories of inmates, "sentenced deportable aliens."  28 C.F.R. § 544.71(a)(3).[6]

---

[6] The term "sentenced deportable alien" is defined in Program Statement 5350.28, Section 9 (c).

> c.   Who is a sentenced deportable alien?
>
>    An inmate is a sentenced deportable alien, and does not need to participate in the literacy program, if he/she is:
>
>    • assigned a Public Safety Factor 'H' status of "Alien" (see the Security Designation and Custody Classification Manual) or
>    • under a final Bureau of Immigration and Customs Enforcement (BICE) (formerly the Immigration and Naturalization Service (INS)) order of deportation, exclusion, or removal.
>    ...

For those inmates who are subject to the mandatory "functional literacy" requirement, failure to comply can result in disciplinary action.  See 28 C.F.R. § 544.75.

BOP Program Statement 5330.28, Section 9(d), specifically addresses the relationship of the mandatory "functional literacy" program requirement, arising out of 18 U.S.C. § 3624(f), to the "satisfactory progress" toward GED requirement, a statutory consideration in the award of good conduct time, arising out of 18 U.S.C. § 3624(b).

> d.   How does the sentenced deportable alien exemption affect the good conduct time of these inmates?
>
> Although sentenced deportable aliens are exempt from attending the literacy program for the mandated 240 instructional hours, they are still subject to the satisfactory progress literacy provision of the VCCLEA or the PLRA.
>
> To vest their earned Good Conduct Time (GCT) or be eligible for the maximum amount of GCT, deportable aliens without a verified high school diploma or a GED who are sentenced under the VCCLEA or the PLRA must meet the satisfactory progress provision of these two acts specified in Section 17 of this PS.

Program Statement 5330.28, Section 9(d).

B.   Due Process Considerations

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Haines v. Kerner, 404 U.S. 519 (1972);

9

Wilwording v. Swenson, 404 U.S. 249 (1971). Such protections are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed. ... In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Wolff, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or from state or federal law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

Federal prisoners have a liberty interest in statutory good conduct time credits. See McGill v. Martinez, 348 Fed.Appx. 718, 720 (3d Cir. 2009). Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a sanction,[7] "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures

---

[7] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison. Congress, however, has provided that federal prisoners serving a term of imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of their sentence based upon their conduct. See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Wolff, 418 U.S. at 557.

By contrast, here, the relevant statutory and regulatory framework affords a maximum of only 42 days annual good conduct time unless a prisoner is making "satisfactory progress" toward a GED diploma.  Based upon this regulatory maximum, some courts have held that federal prisoners who are not making "satisfactory progress" toward a GED diploma have no liberty interest in the incremental 12 days of good conduct time that is available to prisoners who are making such "satisfactory progress." See, e.g., Holman v. Cruz, 2008 WL 5244580 (D.Minn. 2008).

In any event, to the extent federal prisoners have a liberty interest in 54 days of good conduct time credit per year, as opposed to the 42 days maximum credit for which they are eligible even if they are not making satisfactory progress toward a GED diploma, they are entitled to notice and an opportunity to be heard with respect to any deprivation of that liberty interest. See generally Mathews v. Eldridge, 424 U.S. 319, 332-35 (1976). This Court will assume, without deciding, that Petitioner had a liberty interest in the maximum 54 days annual good conduct time.

C.   Petitioner's Claims

Petitioner asserts that the award of only 42 days of 2007 GCT and 2008 GCT was arbitrary and in violation of his due

11

process rights.  Petitioner also asserts that his GED instructor told him that, as an alien, he did not have to stay in the literacy program after he had completed 240 hours of instruction, but that his instructor did <u>not</u> advise him that withdrawal would have a negative impact on his eligibility for the maximum annual good conduct time.  Petitioner asserts that he would not have withdrawn if he had known about the effect on his eligibility for the additional 12 days of annual good conduct time.

It is clear that Petitioner is confusing the two educational provisions of 18 U.S.C. §§ 3624(b) and (f).  As advised by his GED instructor, Petitioner was not disciplined for withdrawing from the "functional literacy" program, under 18 U.S.C. § 3624(f) and its implementing regulations, as he had completed 240 hours prior to that withdrawal.  Moreover, whether or not he was improperly classified as an "alien," it is undisputed that he was never subject to a final order of removal.  Thus, whether or not he was improperly classified as an alien, to the extent he wished to earn the maximum 54 days annual good conduct time, he was required to make "satisfactory progress" toward earning a GED.  This, it is undisputed, he failed to do in 2007 and 2008.

The requirements for earning the maximum 54 days annual good conduct time, with respect to the educational component, are clearly set forth in the statutes, regulations, and program statements referenced in this Opinion.  Petitioner was

immediately placed on "GED unsatisfactory" status when he withdrew from the literacy program and the BOP administrative remedy procedure was available for him to challenge the change in his status and the award of only 42 days good conduct time in 2007 and 2008.  Indeed, he did so utilize the administrative remedy procedure.

The Bureau of Prisons correctly applied the applicable statutes and regulations and afforded Petitioner all appropriate process to challenge the award of 42 days good conduct time in 2007 and 2008.  Petitioner is not entitled to relief.  See, e.g., Reyes-Morales v. Wells, 766 F.Supp.2d 1349 (S.D. Ga. 2011); Delgado-Ortiz v. Holencik, 2010 WL 1222271 (C.D. Cal. Jan. 28, 2010), Report and Recommendation Adopted, 2010 WL 1178061 (C.D. Cal. Mar. 25, 2010); Holman v. Cruz, 2008 WL 5244580 (D.Minn. Dec. 15, 2008).

### IV.   CONCLUSION

For the reasons set forth above, the Petition will be denied.  An appropriate order follows.


At Camden, New Jersey                /s/ Noel L. Hillman
                                     Noel L. Hillman
                                     United States District Judge

Dated: June 29, 2011